United States District Court
District of Massachusetts

①

Melonie Punch
Amy Whalen
Plaintiffs

Vs

Massachusetts Department of
Children and families (see attached sheet)

Amended Complaint

① Plaintiffs Alledge that the violations of our constitutionally protected rights began april 5, 2013 at Boston Medical Center when registered Nurse Perez acting in his capacity as Acting Hospital Administrator placed a call to the Boston Department of Children and families, The call according to case dictation notes was screened in as an emergency response and supervisor Jesenia Collado was contacted, She initiated an emergency response and dispatched ERW's emergency response workers Carolyn Pitter and

Defendants

① Carolyn Pitter   Def Boston

② Marygail Cullinane   Def Boston

③ Jesenia Collado   Supv Boston Def

④ Rw Perez   Boston Medical Center
   acting Hospital Administrator

⑤ Mellissa Dean CPS Boston Medical

⑥ Boston Medical Hospital

⑦ Judge Leahry   Family Court Judge

⑧ Executive Office of Health and
   Human Services   Commonwealth of
   massachusetts

⑨ Jill Jeffers   Def Worcester

⑩ Ellen Ward   Supv Def Worcester

⑪ Foster mom   Robert
   Foster Dad   Kathleen

⑫ Area program manager William Trisque
   Def

⑬ Area Manager Def   Ann Horgan

⑭ Christine kline   Licensed Psychologist

⑮ Mary Pat Le Blanc   Court investigator

⑯ Jennifer Fornsberg   Psychologist

⑰ Marine matuzek   Fathers Attorney

⑱ Anthony mansfield   asst Regional
   Def Attorney

20. Allison Dejordy   Social Worker Def

21. Cierra Fitz   DcF Worcester  Social Worker

22. Deena Noel  Adoption Worker

23. St Vincents Hospital

24. Monique Anderson  Social Worker
    Saint Vincents  Hospital

25. Eric Deyo  Def  Worcester Social
    Worker

26. Kevin Wallace  Supv Def  Worcester

27. Tricia Blake  Social Worker Def

28. Alexis  Ladner  Social Worker Def

29. Womens  And Infants Hospital
    Rhode Island

30. U mass  Memorial  Hospital
    Attorney  Villa  Def  Attorney

31.

2

Marygail Cullinane to Boston Medical Center where they arrived late evening. Upon arrival Social Worker Pitter informed the plaintiffs they were taking Custody of their Son Melvin Andrew Punch. A permanency Hearing document of January 20, 2015 States that the Department of Children and Families became involved when a 51A was Screened in for an emergency Response due to a mandated reporter alleging Neglect And Abuse of Melvin A Punch. D.O.B 4/5/2013 by his parents, Amy Whalen and Melvin Punch. It States that Ms Whalen arrived at Boston Medical Center in active labor and delivered a baby boy. It says Ms Whalen has had five biological children who have been all adopted after being in DCF permanent Custody. That Ms Whalen tested

positive for Cocaine, Opiates and Oxycodone at delivery. And after delivery, baby Melvin was not tested as Ms Whalen and Mr Punch refused to allow child to receive medical care. And that there was further concern that Ms Whalen's own medical history of Herpes and Hepatitis C placed reported child at significant risk if he failed to receive medical care in a timely manner. That Ms Whalen has a significant history of poly substance abuse and that she was not in treatment at the time of the birth. And that at the conclusion of the 51B investigation, allegations of Neglect by both parents were supported.

Every order entered to Care and Custody Shall include Specific findings of fact made by the court which clearly demonstrate the injury, harm or damage that might reasonably be expected to occur if relief pending a modification is not granted on order entered relative to Care and Custody, pursuant to this Section may be entered relative to Care and Custody. This was not done when my Son Melvin Andrew Punch was taken into Custody by Department of Children and families Boston Social Workers on the night of April 5, 2013. Additionally no warrant was issued by any Court at the time and date of his removal from his parents Custody at Boston Medical Center by Boston Department and Children and families which had been Signed by a judge with an affadavitt Signed by 2 ooperating witnesses was obtained by Boston Department of Children and families Social Workers on the

⑤

evening of April 5th 2013 prior to my son being taken into DCF Boston Custody. Lastly my son Melvin Andrew Punch was removed from the Custody of his parents Melvin Punch and Amy Whalen using what Boston DCF workers Pitter and Cullinane, with direction and Approval of their Supervisor Jesenia Collado believed to be in Compliance with Massachusetts Codes, rules and regulations. It is the plaintiffs argument that these Codes rules and regulations which these defendants used to remove their son Melvin Andrew Punch are for government Authorities only and not for human Creators in accordance with God's laws. All Codes, rules and regulations are unconstitutional and lacking due process. We believe that ~~the~~ removal or severe diminishment of a caring loving available parent from a childs life is a cruel, abusive infringement upon a childs Life.

②

On 4/5/2013 Carolyn Pitter did 6 a brief interview after She informed plaintiffs Amy Whalen and Melvin Punch that the Boston Department of Children and families was taking Custody of Our Son Melvin A. Punch. from DCF Case Dictation Information files dated April 7, 2013 Jessenia Collado Supervisor Boston States that Social Worker Pitter States that Amy Whalen told her On the evening of April 5th 2013 at Boston Medical Center. The report reads the worker met with mother alone. the mothers primary Concern is that She is worried that her baby will be taken away. That the mother was informed of the Concerns reported to the Department. Mother Stated that She and the father did not refuse Medical treatment for the baby

7

ON April 5 2013 Plaintiffs arrived at Boston Medical Center with plaintiff in active labor. Plaintiff Amy Whalen upon arrival stated to hospital staff that she was Amy Whalen and gave admittance staff her date of birth when the staff entered the date of birth the hospital records of plaintiffs twin sister Christina Whalen came up. Christina Whalen had given birth a year ago at the same hospital and the child was injured in her care. The staff immediately began calling plaintiff Christina and became extremely rude and discourteous. As plaintiffs explained that she was in fact Amy Whalen and not Christina Whalen and that plaintiff Amy Whalen could only give birth by ceasarean due to concerns of her exposure to genital herpes

Boston medical Emergency room staff
ignored plaintiffs Completely rushed
plaintiffs into a small room off
of the side of the main entrance
left plaintiff Amy Whalen on a
flat gurney and did absolutely
nothing to Assist her in the birth
Of my son Melvin Andrew Punch.
The emergency room staff were
Indifferent to Amys screams and
I held her slightly raised up as
my son was born. When his head
emerged Only then did a doctor
Come Over and rudely yanked my
son out of her. He was placed
in a warmer and stared about
quietly. The delivery room staff had
acted horribly. Their inaction
Nearly led to the death of both
Ms Whalen and Melvin Andrew. By
that time hospital had Correctly
identified plaintiff as Ms Amy Whalen

9

As hospital staff read her record the became aware of plaintiffs prior record with the Massachuetts Department of children and families And that she had lost 5 children at birth to DCF. The within one hour of his birth Melvin Andrew was being taken away by hospital staff. Already irate at how the staff had treated plaintiffs initially plaintiff Melvin Punch were very skeptical of the hospitals intentions. approximately 2 hours after his birth hospital staff informed plaintiffs that they needed to measure the newborns feet size for identification purposes and that this procedure would take just a few moments. At the examination station

10

there were 3 other bassinetts of baby newborns and my Son was wheeld over with them, I was informed that the exam would take 3 or 4 hours and I could come back after. I informed them that was unacceptable and asked for a Supervisor. The Supervisor informed me to Sign a notice of non treatment I did. as we were leaving a doctor Stuck the baby and made him cry. A notice Stated any patient can request a transfer to another hospital via Ambulance I requested a transfer to U mass in Worcester. After Some time in the room with the baby the head doctor came in a woman doctor who asked why I had refused treatment I

the misidentification, the birth
on a flat gurney, the "inaction
of the delivery room doctor's"
the rough handling of my son
at birth, then the misinformation
about what the hospital wished
to do with the baby all convinced
me to transfer. This Dr walked us
to the front Desk to Sign us
out with the baby a nurse
Acting hospital administrator
Over ruled her and Called Boston
Department of Children and families.
The baby was being Signed out into
Plirtiff Melvin Punch's Custody.
The male nurse who overruled the
decision of the head Doctor on
Duty that evening wrs Snatchez
Soon thereafter Hospital Security
Arrived. They Separated me from
Amy and Melvin Andrew. I was
Placed in a very Small room
with two Hospital Security

Guards guarding the door. They made it very clear I could not leave. After awhile I began informing them that my rights were being violated and that I was going to sue them. They kept me in that room nearly 3 hours until Department of Children and Families Carolyn Pitta and Cullinane arrived at nearly 1am. The mandated reporter now changes to Christine Curry from Sanchez and the reason DCF called Changed from because of mothers past involvemant with DCF to how the plaintiffs were unsatisfied with the pediatric Care not they misidentified Plaintiff Whalen and forced her to have a vaginal birth because they had not accessed

13

Amys birth records. The mandated
Reporter also states that the
plaintiffs wanted to leave the
hospital with the baby when
the actual facts were we
wanted him transferred to
another hospital. DCF Social
workers Pitter and Cullinane
then went to Court and Stated
father denied baby Care when
he could have been herpes exposed
where the hospital caused that
risk of exposure by not
Correctly identifying Plaintiff
Whalen. From the point onward
Every Narrative, foster Care review,
court hearing, report or Conclusion
drawn from that false Narrative
Affects every individual who

14

either worked or was associated
with this case. The false
narrative of the hospital Dr Christine
Curry. The mandated reporter the
hospital reports contacted DCF
stated falsely that Melvin Andrew
appeared to be withdrawing
this also was a falsehood.
The Doctor who I spoke to
who was head physician on
duty that evening had examined
the baby and had determined
he was fit to leave with us,
She walked us to the desk to
sign us out. There were no
signs of any Withdrawls
baby was Calm and Sedate
Boston Medical and Boston
DCF falsified documents and
completely changed the Narrative

15

The Narrative went from improper Care of my infant Son and his mother to the Plaintiffs denying our Son immediate medical Care he was deemed as needing due to hospital error to Plaintiffs Attempting to leave the hospital with the infant against hospital Advice. Social Workers Pitter Cullinane and Collado did use their official Authority to write false Statements, Commit perjury all with the intent of defrauding the Federal government by accessing federal funding Available Once their Son was placed into the Massachusetts foster Care System. A Medical Discharge Summary issued by Boston Medical Center dated April 5, 2013 medical record Number 389 6136 does list the admission date as 4|5|2013 with a discharge date for Amy Whalen as 4|5|2013. The report States. That a 29 Y.O

G6P5 admitted in active labor. Prenatal care at outside hospital, Patient denied medical exam revealed no lesions. Patient progressed rapidly to NSVD live male infant. Placenta delivered intact. First degree laceration not necessitating repair. EBL 200. Additional prenatal labs sent. including HCV given risk factors. Please see the extensive documentation regarding the remainder of her hospital course. In short the patient requested to leave AMA shortly after delivery. Given her hx of PSA and + utox for Cocaine, opiates and oxycodone as well as the fact that the family did not permit the infant to be evaluated by the pediactric team, there was involvement of Child Protective Services, DCF, Social work, Security, Risk management the situation resolved with the mother leaving AMA and the infant being taken into DCF Custody.

17

This clearly shows Boston Medical
Center and the Department of Children
and Families Boston Conspiring together
to create this false Narrative in order
to deprive plaintiffs Amy Whalen and
Melvin Funk their Constitutionally
protected parental rights. and denied
plaintiffs their interest to Care
for and manage their Son Melvin
Andrew Funk this is in direct violation
of Sandosky vs. Kramer 455 U.S. 745,
753 (1982). As the previously mentioned
Information Files April 7, 2013 State
Social worker Ritter States that
during her private interview with
Amy Whalen Amy disclosed that She
was worried that the baby would be
taken away. That being the Case
then why would Amy Whalen make
this report taken from Case Dictation
Information printed 07/01/2015.
As told by Social Worker Ritter.

18

Amy Whalen and her Sister Christina Whalen had gotten together to celebrate their birthdays. Ms Whalen reports that she and Melvin drove out to Boston. She reports she was not sure exactly where they met but that it was at some shops near the water. She reports that Melvin gave her $100 and told her to buy herself something nice for her birthday. She reports that Melvin dropped her off to shop with her sister. Ms Whalen reports that her sister invited her to come to a friend's house. She reports that when she arrived that she drank a beer. She went on to Say that her sister came out with some crack to smoke. She reports that she smoked crack with her sister Christina. Ms Whalen reports that about a ½ hour later she went into labor. She went on to Say that when this happened

19

She drank a few more beers to try and come down of her high. Ms Whalen reports that she did not want Melvin to know she was high. She called Melvin and told him she was in labor. She reports that she was dropped off back where Melvin left her so that he would not know that she had left to go somewhere else. She reports that Melvin picked her up and that they drove to the hospital. Ms Whalen reports that she had been in labor for about an hour when she got to the hospital. The report also states Ms Whalen states that she used crack twice before she knew she was pregnant. This report ends stating SW notes that Melvin punch's accounts of events of this prior to the baby being born on this day are very different. Melvin reports no stops from when they left their home in Worcester until they reached

Boston Medical Center. Facts are my statements were 100% true. None of the statements written by social worker Pitter were true or spoken by Amy Whalen. Her previous DCF history speaks of 5 other instances where those events may have occurred but April 5th 2013 was not one of them. Amy's twin sister would never leave her twin in labor, high on crack and beer on some street corner to be picked up. Her sister has children and a family. There is speed pass footage I still have of me driving through the speed pass lane doing 60 miles on hour on the Mass pike thats time and date stamped. It clearly shows we arrived at Boston Medical Center moments later.

this false Narrative of events have been created by Carolin Pitter, Marysail Cullinane, Josenia Collado and Boston Acting Director Perez on the evening of April 5th 2013 or it has been Changed. Throughout the decade this has occured every Social worker, Lawyer, or any individual is tainted by this false Narrative created to deprive My Family of our Constitionally protected Rights.

3. The Case Summary from Case Dictation Information Sheets State "Baby Melvin tested positive for cocaine and Oxycodone on April 6, 2013. On the evening of April 6 2013 he started to display Signs of withdrawls and he was started on Neonatal Morphine.

It is the plaintiffs contention that the series of events which occured that evening were a serious violation of my rights and the rights and safety of my family. Lab results for Amy Whalen from Bmc Yawkey, 850 Harrison Ave Boston Ma with an admission date of 4/5/2013. All Results This is a screening assay only and results are reported as presumptive positive or negative using a cutoff Concentration of 50 ng/mL Results are to be used for Clinical Evaluation Only Confirmation Testing was not performed. Amy Whalen never gave Boston Medical Signed permission to test her the nurse said she took it from the toilet. The head physician examined the Baby and was releasing him to my custody with a promise I would take the child to the

hospital in the morning. Why wasn't Amy Whalens Statement recorded. For the few hours we spent with our Son he was happy and held. We spent every moment huggly and kissing him until he was Snatched away a placed in a nursery with others for less Affection. Those withdrawls they imagined were most likely parental Separation Syndrome. more prevalent with mother Child Separation. If so the medical regime Seleted for my Son was illegal and Immoral. It is a clear violation of these plaintiffs interest to Care and Manage their Child.

24

4). Original Case dictation notes dated 4/9/13 States Ms Pitters actual interview it States this worker met with mother alone. Her primary Concern is that She is worried that her baby will be taken away by the Department. Mother was informed of the concerns reported to the Department. She Stated that She and Father didn't refuse medical treatment for the baby. Mother Stated that the baby went up to the nursery and the hospital failed to do exam on the baby. She Stated that the hospital is at fault because they Should have done what they needed to do when the baby was born. Then it States mother appears to be under the influence. was wobbling off unstedily on her Feet. After having a baby.

the original report also states
That the mother had received prenatal
at Med City mother denying she had
any active infections that she had
recently been prescribed medication
for it and that she understood
the baby needed medical attention
as soon as possible. She stated
She came to Boston to visit her
identical twin sister but never
made it there. How does this
change from one narrative to
another? This dictation note does
State Interview with the father.
The worker spoke with father Melvin
Punch. He informed this worker that
he was not happy with the treatment
his family has received at the
hospital. Father stated that he will
be filing a law suit against the
hospital staff. Every action
Boston medical took after that
was to protect themselves
from that.

24

5 from Commonwealth of Massachisetts Department of Children and Families Case Dic tation Report Staff member Jesenia Collado Contact date 4/8/2013 2:55pm Narrative OCS. Jesenia Collado received a call from Melissa Dean of Boston medical Center. She explained that the baby was put on AZT Medication as a prophylactic treatment because there is concern about HIV. The mother refused to be tested for HIV during her third trimester of pregnancy. The baby will need to be on AZT for at least the first 2.5 months of life. Yet the mother was not positive. These acts by Boston Medical Center violated the parents right to conceive and raise ones children.

Case Notes    also                              2013    29

State On Call Supervisor Jesenia Collado
Spoke with Child Protection Social worker
Melissa Dean of Boston Medical Center.
Ms Dean reports that Baby Boy Whalen
tested positive for Cocaine and Oxycodone
on April 6 2013 the day After he was
taken into DCF Custody. On the
evening of April 6 2013 the baby
Started to display signs of withdrawl
and he has been Started on morphine.
Currently the baby is taking 0.13
milligrams of morphine every four
hours. The baby is Currently in
the Nursery and will be transfered
to the pediatric Unit at Boston
Medical Center as he will require
hospitalization. Meconium testing
has been ordered and the results
will be available in approximatly
One week. So explain how was
he found positive? Supervisor
Collado also Spoke with Boston
medical Center pediatrician

28

Dr Lisa Mohoney who explained that the baby will continue to require daily assessments to determine whether he has active herpes lesions. Dr Mohoney explained that the mothers lack of follow through with her anti viral medication during pregnancy places the baby at risk. Yet Boston Medical forced a vaginal birth through misidentifi and Amy Whalen informed Social Worker Pitter that she did indeed follow up on her medication.

C. On April 8, 2013 a Care and Protection Petition was filed by the Department of Children and families Boston. The Social Worker who filed the petition is Carolyn Pitter. Social worker for the Deprtmnt of Children and families who deposed and said I am a Social worker employed by the Department of

Children and families. My office is located at 50B Park Street, Dorchester MA 02122. I responded to this report within my role as emergency response worker for the child at risk hotline. The subjects of the instant petition before the Honorable Justices of Justices of Boston Juvenile Court 24 New Chardon Street Boston MA 02114 from the Commonwealth of Massachusetts Executive Office of Health and Human Services Department of Children and families are Baby Boy Whalen Dob 4/5/2013 address Boston Medical Center One Boston Medical Center Boston Mass 02118 mothers name Amy Lynn Whalen Biological mother Dob 4/5/1984 Address 102 Beaconsfield Road Worcester MA 01602 fathers name Melvin Punch Biological father Dob 1/26/1961 Address 102 Beaconsfield Road 01602.

32

7. The parents were not notified to attend the April 8th 2013 Care and Protection Hearing in Boston Juvenile Court. On April 12 2013 according to department records a contested temporary custody hearing was held un Worcester Juvenile Court before Judge Leahry in Worcester Juvenile Court. At that hearing Plaintiff Melvin Punch informed the Court that it was his desire to raise his son Melvin A. Punch together with his mother Plaintiff Amy Whalen as a family. But if the Court deemed that as not practical that I would house Amy Whalen in a separate residence and raise my son myself. Judge Leahry relplied that the Court was going to go with my first statement to proceed as a family and ordered my son Melvin Andrew Punch into DcF Custody.

31

While ordering parents to attend all services the Department of Children and families required. Case Law Rodriquez U.S. Ray Donovan states all codes rules and regulations are for gout officials only not human creators in accordance with God's Law. This unconstitutional ruling by Judge Leahry using false testimony as evidence deprived plaintiffs of their right to a fair trial under our U.S. Constitution. At no time did this plaintiff contract with defendant Department of Children and families to perform services to regain custody of his son. Plaintiff did attend some services to expeditite the return of his son. At the conclusion of the April 12, 2013 temporary custody hearing social worker Jill Jeffers introduced herself as the Department of Children and families Worcester West Social Worker Assigned

to the case, Jill Jeffries direct Supervisor
at the Department of Children and Families
Worcester West was Ellen Ward who
took direct Control of the Case.

8. From Case Dictation Information
dated 7/7/2015 the Staff Member Ellen
Ward, contact date 4/22/2013 11:16am
narrative phone call to DCF Social Worker
Holli Hill and left a voice mail
asking her to return call regarding
potential placement for Melvin with
his half-siblings adoptive parents.
From Same Dictation Information
Sheet dated 7/7/2015 the Staff
Member Ellen Ward Contact date
4/22/2013 11:40am narrative: return
phone call from Ms. Mitchell, Children's
Friend, who described Colleen Armiger
and her husband to be wonderful
People. She Stated that She is not
Sure if they would be interested
in taking placement of another
Child, but Said She would not be
Surprised if they did.

33

Ms. Mitchell again expressed having positive opinions of this family. Same Dictation Information Sheet dated 7/7/2015 the Staff member Ellen Ward Contact date 4/22/2013 4:26 pm Narrative return phone Call from Colleen Armiger, previous adoptive parent, and Supervisor explained situation regarding the Department Seeking a placement for Melvin. Supervisor also provided her with details relative to his health and why the Care and protection was filed. Mrs Armiger Stated that as much as She would like to. She has her hands full with what She has already. However She said that She would like the Night to think about this. Same Dictation Information Sheet dated 7/7/2013 the Staff Member Ellen Ward Contact date 4/23/2013 9:29am Narrative. Supervisor received a voice mail from Mrs. Armiger who Stated that She would Not be able to take placement

34

for Melvin she can not take on this extra responsibility. She expressed Sorrow for not being able to do so, but said she does not feel this would be in the best interest of her family. Same Dictation Information Sheet dated 7/7/2015 the Staff member Jill Jeffers date 4/23/2013 2:45pm Narrative Social Worker drove to Boston Medical Center to discharge Melvin from the hospital. Social Worker met with Melvin's nurse and doctor who reviewed discharge instructions. Melvin is being discharged with no medications. Melvin is on a 24 Calorie formula. Social Worker requested the recipe for this formula to pass on to Foster parents. Case dictation Information Sheet dated 7/7/2015 the Staff member Jill Jeffers date 4/23/2013 7:10 pm Narrative Social Worker brought Melvin to his Foster Placement for the night. Social Worker reviewed medical history with Foster mother as

Well as hospital discharge instructions. Social worker provided foster mother with donated clothing and supplies from the hospital for Melvin. Social worker informed foster mother she would be contacted tomorrow.

These actions by defendants Ellen Ward and Jill Jeffers are built upon assessments made by Boston Medical Center Acting Hospital Administrator on April 5th 2013, Carolyn Pitter Social Worker Department of Children and Families Boston, Mary Gail Cullivame Dcf Boston, The Commonwealth of Massachusetts Executive Office of Health and Human Services, Department of Children and Families Worcester West and Family Court Judge Cechry to All Commit a Conspiracy to Commit kidnapping and perjury and deprive these plaintiffs of their Constitutionally protected Rights to parent their Child.

36

this was done in violation of the
due process law. and is a breech of
Trust of these public officers.
These plaintiffs do state that we
are independent of All laws except
those prescribed by nature. We are
not bound by any institutions
formed by our fellow man and
do not consent to be so bound.
From Case Dictation Information Notes
run date 6/16/2015 the Staff person
Jill Jeffers date 5/3/2013 9:15am
narrative Social Worker went to the
Punch/Whalen home for Scheduled home visit.
Upon arriving Mr. Punch answered the door
and welcomed Social Worker in. Mr Punch
reported that Ms Whalen would be down
soon. Mr Punch also reported that Mrs
Whalen had scheduled group at Spectrum
today as her Service Plan had requested.
But could not go because of this
Scheduled Home visit. Social Worker Jeffers
replied that the visit could have been
rescheduled around her group and

37

In the future that its more important for her to attend the group. Social worker met with the family in the living room, The home appeared clean, organized and free from any visable hazards. Social Worker Asked to see the room where the baby would be staying Overall the room appeared appropriate. The room contained a crib, changing table diapers, wipes and many childrens clothing items. The parents have more than adequate supplies for baby. The defendants attempts to place Melvin A. Punch in a home when the parents home was more than adequate shows these defendants violations of plaintiffs constitutionally guaranteed rights. By placing Child in any home Available placed child at risk when DCF was willing to place child Anywhere but with their parents. All of these individuals contributed false statements which deprived parents of their rights

And the Ability to properly raise their child. These false statements become the basis of the narrative the Department of Children and families would use to deprive plaintiffs of four children.

9. As part of The Department of Children and Families false reunification plan with the plaintiffs DCF Worcester West Supervisor Ellen Ward and Social Worker Jill Jeffers presented to plaintiffs a Service Plan, The Plan States that it is an agreement between the Anderson Family and the Department of Children and Families Named Anderson from MS Whalens previous DCF Case. The Case is Solely with plaintiffs Melvin Punch and Amy Whalen. The Service Plan States it is for the period of 5/9/2013 to 11/09/2013. The Plan States as Family Strengths and Needs and briefly States the Specific reasons why Services are being provided to this family

The Anderson (Whalen)/Punch Family became re-involved with the Department when a 51A was screened in for an Emergency Response on 4/5/13 due to a mandated reporter alleging Neglect of Melvin Punch, DOB 4/5/2013 (a.k.a Baby Boy Whalen) by his parents. Amy Whalen and Melvin Punch. Ms Whalen arrived at Boston Medical Center in active labor and delivered a baby boy, Ms Whalen has had Five biological children who have all been adopted after being in DCF permanent custody. Ms Whalen tested positive for cocaine, opiates and oxycodone at delivery. Punch After delivery. baby Melvin was not tested as Ms Whalen and Mr Punch refused to allow child to receive medical care. There was further concern that Ms Whalens own medical history placed reported child at significant risk if he failed to receive medical care in a timely manner. Ms Whalen has a significant history of Poly Substance abuse and was not in treatment at the time. At the conclusion of the 51b investigation allegations of Neglect by both Parents were Supported. as of 5/9/2013 The Goal for family is permanency through

40

Reunification of the family in this document and yet reunification was never these defendents intentions. Tasks as outlined in the Service Plan are Social Worker to visit the home at least monthly and view/interview all members of the Family. Make all necessary service referrals and monitor the provision of services. Monitor progress of all family members toward achievement of Service Plan outcomes. Maintain regular contact with collaterals. Continually assess the needs of the Family and update services as needed. Attend all Case Conferences. Tasks for the Providers The Foster Parent agrees to ensure that the Child's basic needs are being met on a daily basis. Ensure that the child receives emergency and routine medical/dental care. Meet with DCF Social Worker once per month and as needed. Attend all Case Conferences

41

Visitation schedule of the service Plan states Parent/visitor supervised. Comments. Mr Punch will have supervised visits with Melvin a minimum of one hour twice per month at the DCF office. It is expected that Mr Punch will not arrive to visitation under the influence of any illegal substances or alcohol and should he appear under the influence the visit will be terminated. It is expected that Mr Punch will not display any out of control behaviors which includes but is not limited to yelling, swearing, or threatening of any kind. It is expected that Mr Punch come on time and come prepared with supplies for Melvin which includes but is not limited to diapers, diaper cream, wipes and extra cloths. Comments about Parent/visitor Amy Whalen were the same. On 5/10/2013 there is a notation the Service Plan was changed/updated.

42

This Service plan is Signed by Supruisor Ellen ward 5/10/13, Social worker Jill Jeffers Foster Parent Robert and Foster Parent Kathleen. 5/10/13.

It is the plaintiffs Contentions that the Service plan, placement of and removal From birth parents violated plaintiffs rights to live together without governmental interference, Our due process rights and Our right to parent and direct the Care, Upbringing and education of our Child. Our Rights under May V. Anderson which guarentee our parental Rights as more precious then property. The defendants did Conspire by Conference to use Codes, rules and regulations in addition to perjured and altered documents to deprive plaintiffs their Constitutionally protected Rights using Color of law. Plaintiffs Constitutional Rights were violated these Rights were clearly established at the time of violation. Conferences to decide the actions taken in plaintiffs Case were endorsed and Sometimes attended

by Area Program manager William Trinque
and Area Manager Ann Horgan, all decisions
on the actions taken in plaintiffs Case
with Dcf worcester West are approved by them.

10. From Dcf Assessment Worksheet printed
7/1/2015 the Childs personal History Section
reads Melvin Andrew Richard Fred Alexander Punch
was born on 4/5/2013 in Boston MA at Boston
Medical Center to Amy Whalen and Melvin Punch.
This Social Worker notes that the birth
certificate was not signed until 4/23/2013
and Mr Punch is listed on the Childs Birth
certificate. Baby Melvins parents are not
married, however they refer to each other
as husband and wife. Paternity testing in
place and will be Conducted on Wednesday
6/19/13. Ongoing Social Worker Jill Jeffers
informed plaintiff Melvin Punch that
because of Amy Whalen previously
naming other men to being fathers of
her newborn Children the Department of
Children and families Worcester West
under direct orders of Ellen Ward
were ordering me to perform a paternity
test to determine if in fact I
was the baby's biological father

44

Jill Jeffers informed me that It was the departments intention to exclude me from the Care and protection if I was deemed not to be the biological father.

The Same Assessment worksheet printed 07/01/15 written in May of 2013 States that Social Worke Jill Jeffers on instructions from her Supervisor Ellen ward does has Concerns that Melvin Senior Continues to live with a known Substance Abuser. It notes that Despite recommendations by the department due to Ms Whalens long time Substance abuse history to be in an in patient program has not followed through with the recommendation for Ms Whalen. Melvin Continues to minimize Ms Whalens Substance abuse and reports that he had no knowledge or belief that Ms Whalen was Continuing to use drugs and alcohol during her pregnancy. The Same assessment Sheets printed 7/1/2015 written may of 2013 by Jill Jeffers States under Parenting Skills Strengths and Weaknesses. Melvin Punch

45

Appears to feel as though he is more than
capable of parenting baby Melvin due to
the fact he has raised two adult children.
He reports that they are two well
educated women with good jobs and that
this must mean he has appropriate parenting
skills. Melvins interactions with baby
Melvin appear to be appropriate during
supervised visits and he is able to
demonstrate he knows how to take basic
care of an infant. The Department
has questions in regards to baby Melvins
paternity due to Ms Whalen's history
of alleging fathers who did not end
up being the father of the child.
It is of serious concern of Melvin
being able to provide care for baby Melvin
because he still remains in a relationship
with Ms. Whalen who has a long and
significant history of substance abuse
and Mental Health issues. It does not
appear that Melvin would be able to
set limits with Ms Whalen or know
whether she is posing a safety risk
as he has a history of minimizing her

46

Substance abuse and mental health needs. It is also noted that it is still unclear if Melvin has any current issues with illegal substances or prescription medications. As to date Melvin has not followed through with the Substance Abuse Evaluation required by the department. It is also noted that Melvin is prescribed narcotics and muscle relaxers due to chronic pain from a previous job injury. This is of concern for two reasons. This Social Worker has been unable to confirm with Melvins doctor who prescribes this medication, the side effects it poses in regards to his ability to parent as well as to confirm the diagnosis as to the prescription. The other concern is that Ms Whalen has a history of taking prescription medication of other partners and whether Melvin is supplying Ms. Whalen with this medication. Melvin Reports and this Social Worker notes that Melvin has his prescription medication in a locked room and that it is not locked in a room because of her.

47

It is the plaintiffs contention that these acts perpetuated by these defendants created a conspiracy and agreement between these individuals to deprive plaintiffs of their Rights. By using assessments which are formulated through the biases of the person doing the assessment defendants conspired to use conjecture as fact to intentionally violate plaintiffs Constitutionally Protected Rights. This is in violation of Skinner vs. Oklahoma 316 U.S. 535 541(1942) Basic Rights of man. Each individual introduced into this case began with the biases of the falsified reports. And their outright fabrications. reports have been changed continuously to affect the outcome of permanency hearings and Juvenile Court Judgements.

48

11. An example of this is from a 51A report. Intake Name and ID Longo - 222033a report type and date 51A Report 04/08/2001 6:40 pm. Decision and Date Screened in Non Emergency Response. Status and date. Approved 04/09/2001. Worker and Agency Vanessa Carrington, Judge Baker Screening A. Information on the children name Nicholas Longo Dob 05/21/1994 6years. Information on Adults and Alleged Perpertrators Karen Longo mother, Christopher Longo Father. The mandated reporter is Richard Paradise. He is a Psychologist in Private practice and has has two Sessions with the Child. The reporter has no Prior Knowledge of Abuse or Neglect in this Family. The reporter alledged the Neglect of Nicholas Longo, age 6 years, by the mother. The reporter Stated that he has been involved in two Sessions with the Child. The reporter Stated that the Father brought the Child in, due to his writing on the Walls of the Fathers home with Crayons. The child originally Said that he could not Control himself and it appeared that the Child might have been Sleep walking. The Child Stated to the reporter that the mother had been

49

telling him to write on the fathers walls. The reporter Stated that the child told the mother on Thursday that he had not written on the fathers walls. Because of this the mother told the child to stand in the corner. The reporter Stated that the mother forced the child to stand in the Corner for approximately 5 hours. The reporter Stated that the child asked the mother if he could use the bathroom. The mother would not allow the child to use the bathroom and the child Urinated in his pants. The mother then yelled at the child for Urinating on himself. The child also told the reporter that the mother Sometimes leaves him in the Care of her boyfriend Melvin who lives in Worcester. Melvin would Occasionally leave the child in the home alone. The reporter Stated that the Father told the child to call the police. If this happened. The reporter Stated that Melvin "found out" that the child was told to call the police, Melvin tied the child to the bed. So that he would not be able to call the police. The child has also told the reporter that Melvin hits him. The child also told

the report to pick up his child off so at the mother's Apartment, and leave him in the hallway, until his mother returned. The reporter Stated that the mother and father Share physical Custody of the Child. The reporter did not want to File against mother's boyfriend Melvin. In June 2013 a family assessment was made on my Son Melvin A Punch and his father. The 51A for Longo was Closed 6/25/2001 with the reason being Consumer Case Closed After Assessment. In the June 2013 Family assessment made after paternity to Melvin Andrew was proven Jill Jeffers under orders from Eileen Whale wrote Melvin Andrew Punch was born on 4/5/13 at Boston Medical Center in Boston at 38.4 weeks gestation. following a Supported investigation on 4/5/2013 for the Neglect of Newborn Melvin Andrew by his parents Amy Whalen and Melvin Punch allegations were Supported. At the time of the Childs birth Ms Whalen tested positive for Cocaine, Opiates and Oxycodone at delivery. Baby Melvin tested positive on 4/6/2013. for Cocaine and Oxycodone.

and began displaying signs of withdrawls ⁵J on that evening. Mothers Medical records noted that she was diagnosed with Herpes Simplex Virus and she was not following recommended medication regimen during pregnancy. There was Concern that the baby may Contract the infection. Ms Whalen and Mr Punch refused to allow the baby to receive medical Care upon delivery. Ms Whalen was also diagnosed with Hepatitis C for which the baby needed to be assessed upon birth and parents refused to allow this. Mr Punch denied any knowledge of mothers Substance abuse. father Melvin Punch, has a history with the department. On 4/8/01 a 51A was filed. A child disclosed that his mothers boyfriend, Melvin Punch on more than one Occasion tied his wrists and feet to the bed. He reported that this was done so that he could Not Call 911 to let Someone know that he was being left Alone. and that on one Occasion Melvin

52

hit him on his bottom leaving a red mark. The allegations of physical abuse were supported. These 51A and 51 B reports are constantly changed. The Social worker, Supervisor and Area Manager all agree to change the narrative of filed documents to support their false allegations. Prior to the 51A filed against plaintiffs Amy Whalen and Melvin Punch there was no history of Melvin Punch and the Department of Children and families for the Longo case was closed in 2001. After plaintiff was determined to be Melvin Andrew's Birth father this report was resurrected and added to the fathers file as a supported allegation. The 51A submitted by Carolyn Pitter on 4/5/2013 was altered to read on a copy printed 5/08/15 2:01pm Father is associated to the Longo 3340337 Father Melvin Punch has a history with DCF. On 4/08/2001 a 51a was filed by a mandated reporter who filed a mandated report alleging the neglect and physical

53

Abuse of a 6 year old Child, Nicholas Longo.
The Child disclosed that his mothers boyfriend,
Melvin Punch, on more than one occasion while
being baby sat by Mr. Punch he was tied up in
bed and left alone. He reported that he
was tied in the bed with a rope. His wrists
were tied to the bed as his feet were also
tied. He reported this was done so he could
not call 911 to let someone know he was
being left alone. The Child also reported
that on one occasion he was hit by Mr
Punch on the bottom causing a red mark.
He reported he knew there was a mark
because he looked in the mirror. The child
also reported that Melvin would drop him off
at the mothers apartment and leave him in
the hallway until mother returned. The allegation
of physical abuse of this unrelated Child by
Mr Punch was supported. At no time in 2001
was this plaintiff made aware of these
allegations. It was not until 2013 when
the 51A was rewrote to find the
allegations against this plaintiff supported.
During the permanency hearing held in 2015
Nicholas Longo now 20 testified these

54

allegations were all false and he had been forced to relay this information by his birth father. Dcf used this false narrative in Court hearings, Conferences, foster Care reviews, assessments, Service plans and all reports related to this Case. This was all done in a deliberate attempt to deprive these plaintiffs of their Constitutionally guarenteed rights under Color of Law. Dcf Supervisor Ellen

12. ward insisted in plaintiffs Service Plan that Dcf Social Workers were to be permitted to perform montly home visits to my home. The first such visit occured in April of 2013. At the April visit upon entering the home Dcf Social Worker Jill Jeffers immediately began walking from room to room and soon had inspected the entire downstairs of the four bedroom home. She then proceeded upstairs and walked room to room until the entire upstairs of the home had been inspected. She then proceeded back down stairs

to the living room of the house and s
sat down. After a few minutes
she informed Amy Whalen and Melvin
Punch that she wished to interview
Amy Whalen alone and not in his
presence. Mr Punch was asked
to leave the room and Mrs
Jeffers proceeded to interview
Ms Whalen alone. This interview
lasted more than one hour and
a half. After this interview
Mr Punch was called back downstairs
and informed by Ms Jeffers that he
too would be interviewed by Ms
Jeffers alone and that his interview
would be scheduled for friday May 3
2013 at Plaintiffs home at 9:15am
Ms Jeffers then informed both
Plaintiffs that their son Melvin
Andrew Punch had been placed in
a pre adoptive home and the home
contained three other children
with ages from three year to
thirteen years of Age.

Def practice of isolating plaintiffs
during interviews which are not
recorded interferes with
plaintiffs right to fair trial.
As is show in previous narratives
Contained here in it is common
Def to change Amy Whalen and
Melvin functio Statements and
then Swear to these Statements
an Court as being fact. Defendants
did also Conspire to deny parents
their interest to Care and manage
their child. Santosky v. Kramer
455 U.S 745, 753 (1982)
Case dictation

13. June 14 2013
Notes of Jill Jeffers through
her Supervisor Ellen Woodread
Social Worker made a Call to
Foster Parents. Social Worker asked
if they would be able to
have the baby, baby Melvin
available for paternity testing
at the Worcester District Courthouse
on Wed 6/19/13. They Said they

57

Would be available for this.
This violates parents Basic Rights
of man  Skinner v. Oklahoma 316
U.S. 535, 541 (1942) and is a
Fourth Amenmeant Rights violation.

(14) From April 12, 2013 to October Def
Social Works Jill Jeffers then other
Social workers who were assigned
to the Case as two Social workers
were assigned to home visits and
all visits and follow up for Services.
Services Included fathers Group weekly
at Perwet for 12 weeks and parenting
classes a 2/12/2014 Serviced plan
Strtegy that Melvin Puneh meet
with the Social Worker Once per mouth
Inform Social worker of Changes in
phone Number or address, Sign releases
of information for all Current
treatment providers (to include Copies
of all drug Screens. Complete a
Substance abuse evaluation and
follow through with all recommendations,
also Sign a release of information
So that the Social Worker Can Speak

58

With Clinician prior to completion of the evaluation so that the Department can accept this as a valid evaluation. Provide this Department with the results of any drug screens that are taken by any of his treatment providers. Refrain from the use of all illegal substances which includes but is not limited to mis/abuse of prescription medication. Refrain from associating with known drug users or anyone who is under the influence of drugs. He will also not engage in any illegal activity. Maintain clean suitable housing that is clean, sanitary and substance free. Enroll, engage and complete Fathers Group classes. Take prescription medication only as prescribed. Provide the Department with a list of all current medication he is prescribed. He will also sign release of information forms to allow Social Worker to speak to his current prescribers to verify medical condition for which Narcotics were prescribed and whether the

doctor has any concerns for substance misuse including prescription misuse. Engage in individual counseling to address stressors of not having custody of his child. being involved with someone in a relationship who has mental health and substance abuse issues. assess/address his own mental health and/or anger management issues, as well as any other issues he may be struggling with at this time, he will follow through with any recommendations that are made. follow the recommendations of the parenting/psychological evaluation that was completed on February 10. 2021. Provide the Department with verification of income to verify ability to provide basic needs for self and son.

15    Area Program manager William Trinque
Area manager Ann Horgan, Dcf Supervisor
Ellen ward and Dcf Social Worker Jill
Jeffers and others held regular meetings
to plan the outcome of this Case.
They did conspire Collectively to deprive
Plaintiffs of their rights Under
Color of Law, deprive of Rights of
due process to deny Melvin Punch and
Amy whalen life, liberty and
their property. Plaintiffs made
numerous attempts to Comply with
wishes of the Department in a
desperate attempt to regain their
Son. Department Consistently
found Parents not to be 100%
in Compliance. above Named
Defendants demanded Plaintiff
to take a Parenting Psychological
evaluation which was Completed
2/12/20. On that day Supervisor
Ellen Ward, Jill Jeffers, Area
Program manager william Trinque
and Area Manager Ann Horgan held

Where the goal was changed from
reunification of Plaintiffs Amy
Whalen and Melvin Lynch to adoption
of our Son. These individuals did
intentionally interfere in Plaintiffs
Constitutional Right to live
together without governmental
Interference. The psychological
examination was completed in
february of 2014 it was performed
in Dcf's Worcester West Office.
16. The psychologist was a regular
hire of Dcf and her evaluation
was biased completely on the side
of Dcf. She wrote in her report.
Melvin denied Amys addiction problem
He told a story about being in the
hospital and unable to subjugate
his Narcissistic Need for
high status long enough to
jump through Dcf hoops and take
his Son home. Similiar Sentiments
were expressed in Mary Pot Le Blanc

Court Investigator for Worcester County Juvenile Court in her June 21, 2013 report. And also a parenting Assessment done by Jennifer Fornsberg a Licensed Psychologist on 3/18/15. Which painted glowing assessments of the foster parents and a completely negative narrative for these plaintiffs. All of these reports are fruit from the poison tree of the first false narrative Carolyn Pitter, mary gail Cullinane and Jesenia Colledo and Boston DCF along with lies and distortions of facts told by Boston Medical Center. A letter Send by Jill Durand to plaintiff Melvin Purchs court appointed attorney Marina Matuzek states Since we have been unable to connect regarding Melvin following my visit observation I thought I would share a short note regarding the evaluation.

63.

To date I have had the opportunity to review records, speak with collateral providers, interview Mr Punch on two occasions, administer testing and observe a visit. Mr Punch appears to be of average intelligence. On testing he is defensive and does not endorse any significant problems, both with regard to his own emotional functioning and parenting experience. It is my opinion that despite a personal history that might impact a persons social and emotional distress, furthermore he continues to deny information that is well documented in the records. These remark clearly violate plaintiffs due process rights and denied them fail trial for Custody of their son.

17. Dec 14, 2014 Plaintiff Melvin Punch received this letter from his Attorney Moira Matuzek Counsel moves this Honorable Court for leave to withdraw as Counsel for respondent father Melvin Punch and for the

64

assignment of new counsel from the Committee for Public Counsel Services. As grounds therefore Counsel states that she has previously moved to withdraw from this case on December 7 and December 9th 2015. and clearly stated to the Court that it would appear that there was a serious breakdown in communications with the respondent father and that in the interests of justice it would not benefit the Respondent to continue to represent him. Counsel was ordered to continue to represent him and ordered to present all witnesses that the Respondent father wished to call. And to present all documents the respondent father wished to present. Counsel met with respondent father on December 9 and 12 2015 and still disagrees with respondent father as to strategy. In July Plaintiff reported Attorney Matuzek to the Boston Board of Bar Overseers for not returning calls to providers or preparing witnesses to be called She was ordered by them to take classes on Sundays.

65

(18) At trial she did not object to evidence introduced by Anthony Mansfield Assistant Regional DCF Attorney. Including Adcare records for Melvin Punch, VA Medical Records for Melvin Punch Spectrum Health Systems records for Amy Whalen, Worcester Police Records for Amy Whalen and Melvin Punch, Court Investigators report of June 12 2013 and all foster case reviews Witnesses to be Called by Atty Mansfield were Social Workers and Collaterals associated with the Case including Ellen Ward, Jill Jeffers, Alison Dejordy, Cierra fitz all Def Social Workers who have Contributed Notes to this Case as well as Deena Noel Adoption Worker, Jennifer formberg Psy.D Christine Cline Phd. Attorney Mansfield requested Medical and Substance Abuse records and Used that protected information to deny Plaintiffs a fair trial. In Attorney Mansfield's request for these

records dated 11/25/2011 that it states that medical and substance abuse treatment records may be released if authorized by an appropriate order of a court of competent jurisdiction granted after application showing good cause therefore including the need to avert a substantial risk of death or serious bodily harm. This was not the reason for this request and caused serious injury and due process violations to the rights of Plaintiffs. At the conclusion of trial in January 2012 my parental rights to my son were terminated. This was due to these defendants depriving plaintiffs of their rights under color of law. This violated plaintiffs rights under Skinner V Oklahoma, and Meyers V. Nebraska. And has caused plaintiffs irreparable harm.

(1) The judge characterized the Father's miss'
of visits with his son as willful. Consi'
the fact that the majority of visits were
made it is reasonable to assume that over
the three plus years his son was in Dcf
Custody that some of these visits would be
missed.

2. b. Conclusions of law. The Judges determinatio
that the father was unfit by siteing
eight instances of which only four were
Challenged Clearly Shows that the father
was represented by ineffectual Counsel and
that the trial was not held in the best
interests of the Father. This fact renders
the trial unfair.

3. The fact that the DCF worker States that
the fathers visits with his son went very
well then testimony that the father sometimes
became Angry which were not Challenged by
the fathers attorney also alludes to the
fact that the Father was represented by
ineffectual Counsel.

4. The fact that the trial Judge accepted as
fact that the Father had not formed a bond
with his son even though DCF workers State
that the visits went very well does not
seem factual.

68

**5.** Denial of fair trial.

This is evidenced by the ineffectual counsel the father had at trial by the fact that Numerous assertions were not objected to by the fathers Attorney and many Statements by the foster parents and the Childs mother which were heresay were entered into the trial record as fact

69

6. The fact that the judge asserted that the Childs forced removal From his pre adoptive home where he has significantly bonded to the family ~~but a~~ would cause him Substantial psychological harm does Not bode well when given the fact that thousand of Children are removed from homes and families where they have bonded each year by dcF. The Ombudsman office has stated in the beginning of this case that this Child should have never been removed from the fathers custody in the beginning of this case. It was DCF error at the birth of this Child to remove him from his father and more psychological harm would be caused to him by him Not being raised by his own Family and him Not being raised proud of and bonded to his own Race. It is in the interest of Justice that this Child be returned to his father and given his young age and with proper Counseling he will be Able to over come Any hardships which may develop by returning him to his father

70

or that the father failed to engage in individual Counseling which the father did Attend through adcare and through the V.A.

The father did acknowledge his alcohol abuse in the past through the V.A and Adcare Sessions. At no time during the trial or at visits with his Son did the father display his alledged Narcissistic behavior which was diagnosed by a department associated therepist after only one assessment the father engaged in Counseling on Numerous occassions over a nearly three year period

There was no evidence other than here Say that there was ever any Substances in the fathers home. The father passed Numerous drug Screens which clearly showed him to be free of Substances. The father placed his Sons Need upper most in his life by going to each visit fully prepared And by having a bedroom fully equiped to house his Son.

71

20. On 6/6/14 Plaintiff Melvin Punch was ordered by the Department of Revenue in Worcester to pay $144.00 dollars weekly in Child Support for Melvin Andrew Punch even though my parental rights had been terminated. I was found to be automatically in arrears for 1,296. as retroactive for 9 wks, These payments lasted over 2years and totaled nearly $20,000 dollars. This is an infringement on plaintiffs Basic Rights of men and in violation of Sklaner V. Oklahoma. Def received money from Social Security to remove and care for my son. forcing plaintiff to pay support for a child he can no longer see is a violation of my Constitutional rights.

21. On July 6 my 2nd son with Amy Whalen was born in Saint Vincents hospit in Worcester. Worcester west Investigation Unit 6 Sent DcF Social Worker Nicole Polissack. her Narrative is as follows mandated Reporter is alleging the neglect of Ryion Punch age one day by the mothers Amy Whalen. The mother told the reporter that she has six other children none of whom are in her care. Mother is currently presumptive for Cocaine. She had a C Section. The nurses have numerous concerns. The nurses told the parents that they Needed the babys mercowium however after the baby pooped the diaper could Not be found. Mother denied Cocaine use during pregnancy. And reported the report was false. Hospital staff Stated they removed a Sample of Plaintiffs Urine from her ureatha bag while she was under going Surgery. Mrs Whalen demanded a new Urine screen be completed

It was and prior exposure, their
results were Negative. Nurses
reported that the third attempt
to collect urine was completed
and the infants urine was negative
Although hospital Staff Stated Ms
Whalen was presumtive positive
Ms Whalen has no positive Screens.
Sint Vincent Hospital lab report
Contains a disclaimer. This test
was developed and its performance
Characteristics determined by Lab
Corp Loboratories. It has Not been
Cleared or approved by the U.S Food
and Drug Administration. This
test is used for clinical purposes.
It Should not be regarded as
investigational or research. Yet
Dcf used this faulty test to
Create a narrative to take
Rijion Punch into Dcf Custody
where he remains today. Also in
regards to the hospitals Claim
they Could Not Search the baby's
merconium Dcf produced a Med Tox

Med Tox Laboratories... 73

States On the day Kyion was born 7/6/2017 a 50 old baby girl was tested and found to be positive for Substances. The document appears to have been altered. Building this new case on the back of the previous one more false allegations are added to the Case File to deny parents their Constitutional rights to their Children and to deny them fair trial. On July 13th 2017 after 6 Consecutive days and nights in St Vincents Hospital with our Son Dcf Social Worker Nicole Polisseck arrived at Plaintiffs hospit room with hospital Security. Nurses took Kyion and locked him in the Nursery while plaintiffs Wholen and Punch were forced to leave the hospital. Dcf has made No effort to reunite this Family Son After Nearly 6 years of their Son Kyion being in Dcf Care.

74.

Kyion was injured in a in home daycare in the foster home he was staying and was seriously injured and no 51A was supported for this abuse. In May 2022 Plaintiff Kyion informed Department of Children and families Social Worker Eric Deya that his arm had been injured in the foster home by the foster parent who suspended plaintiff Kyion in the air by one arm as a punishment. I immediately reported this abuse to the DCF Abuse Hotline, the investigation of this abuse by Department of Children and families Worcester west Social Workers and Supervisors Eric Deya, Ellen Ward, Kevin Wallace, William Trainque, Ann Marcavic

75.

A care and protection order was granted 7/13/2017 for Kyion to be placed in Def custody. On December 20 2017 A letter was sent to plaintiffs from Defendants Tricia Blake and Alexis Ladner the purpose of this letter is to inform you that the Department completed a Permanency Planning Conference at which the concurrent goal of Adoption was established for Kyion Punch. This Conference was Attended by Def Supervisors, Adoption Workers and Def Attorney of Anthony Mansfield Office Def Social Worker Nicole Polissack Contacted St Vincents Hospital worker Trisha Stacey who at that time had reviewed all nursing notes from each shift throughout the weekend without concern. She reports the parents were appropriate and the infant baby is doing well. The infant was not scoring for withdrawal and is ready for discharge. This was Case Dictation notes dated 7/10/2017

22

76

22. On January 11, 2020 while traveling through Rhode Island Plaintiff Amy Whalen in active labor arrived at Womens and Infants Hospital in Providence Rhode Island. Plaintiff Kaylani Punch was born completely healthy Womens and Infants Hospital found No evidence of Any substance in Plaintiff Kaylani Punch Nor Plaintiff Amy Whalen. Staff at Womens and Infants Hospital requested Plaintiffs Whalens permission to retrieve her medical Records from her primary Care physician at St Vincents Hospital in Worcester massachusetts. Plaintiff Whalen Agreed and the records were retrieved. Contained in Plaintiff Whalens Medical Records was a Notation by her primary Care physician of Plaintiff Whalens involvement with Massachusetts

Department of Children And Families Located in Worcester Massachusetts upon learning this Defendant Social worker employed by womens and infants Hospital restricted Plaintiff Whalen and Punch's from complete access to Plaintiff Kaylani These defendants took Custody of Plaintiff Kaylani where access could only be granted to Plaintiff Kaylani was in a locked And Staffed Nursury. Defendants violated Plaintiffs rights by placing Plaintiff Kaylani in Defendants Custody.

76

Dcf Social worker Cincly tebus traveled to Women's and Infants Hospital in Rhode Island from Worcester. She stated that Women's and Infants Social Worker Called Worcester West Dcf to report a Substance exposed child. This is a complete false hood. All toxicology reports for Mother and Child Kaylani Punch are clean for Substances. Also being in Rhode Island, if Kaylani would have been Substance exposed Rhode Island Child Protective Services would have become involved in the Case and Not Massachusetts. Again we See Dcf Social Workers Changing Narratives to deny these plaintiffs their Constitutional Rights to their Children. All reports Contained in Department of Children and Parents files finds the Parents unFit and the Children Substance exposed. This was Not the Case for Melvin Andrew, Kyion and Kaylani.

Punch. Kaylani was removed from her parents care and placed in foster care in Massachusetts depriving plaintiffs of their rights under color of law

23. On February 15 20.22 Celeste Norberto was born in Umass Hospital to Raymond Norberto and Amy Whalen. DcF Social Worker Eric Deyn took custody of this child from the hospital and her parents because he had concerns Amy Whalen was in a relationship with Melvin Punch Deyn's Supervisor at DcF Kevin Wallace concurred with this decision and ordered it followed. He also moved to have Celeste's case moved to Worcester for termination of the parents rights even though the case is being held in Dudley District Court and the Judge there wants to return the child to her parents.

78

though Neither plaintiff Whalen
nor plaintiff Kaylani had any
illegal Substances in their bodies
both Plaintiff Whalen and Plaintiff
Kaylani were held at Womens
and Infants Hospital past her discharge
date. Defendants then Conspired
with Defendant Massachusetts
Department of Children and families
to travel to Rhode Island and
take Custody of Plaintiff Kaylani
and transport Plaintiff Kaylani
to Massachusetts and Place Plaintiff
in State Custody. In violation of
State and federal law. This is
a violation of the 4th Amendment
Which ensures persons Shall be
Safe from unreasonable Search
and Seizure.

For plaintiff Celeste Norberto.
In his remarks to the Court
Attorney Villa did state that
Plaintiffs Melvin Punch and Plaintiff
Amy Whalen would definitely lose
their parental Rights to plaintiff
Kyion Punch and Kaylani Punch.
Attorney Villa is representing DCF
In Plaintiffs separate case for
Kyion and Kaylani Punch. That
trial is scheduled for November
and yet Attorney Villa is already
certain of its outcome. This
is a violation of Plaintiffs Due
Process Rights and is a
violation of the 14th Amendment
to the U.S. Constitution.

② In a Foster Care Review held
at Worcester West Department of
Children and Families held in
Worcester Massachusetts in

October of 2023 Department of Children
and families Worcester West Social
Workers Erica Deya, Ellen Ward,
William Trainque, Kevin Wallace,
Jessica Mackowiak, Ann Horgan along
With Attorneys Jonathan Villa, Erin Ruggn
And others all Concluded that Plaintiffs
Melvin Punch, Amy Whalen would lose
Custody of Plaintiffs Kyion Punch and
Kaylani Punch at their upcoming trial
in November of 2022. These individual
Along with others did Conspire to
deprive Plaintiffs their Constitutional
Protected Rights Under Color of
Authority. These individuals Created
a Narrative about Plaintiffs Melvin
Punch and Amy Whalen then
introduced their Narrative in State
Court under OAth to deceive that
court into believing their false
Statements were Fact. This
deprived the plaintiffs of their
Right to fair trial,

78

24. Cause of Action in this Complaint

1) are violations of Skinner v. Oklahoma
316 U.S., 535, 541 (1942)
Basic Rights of Man

2) violations of Stanley v. Illinois
405 U.S. 645, 651 (1972)
importance of Family relations
under the Law

3. violations of Meyers v. Nebraska
62. U.S. 390, 399 (1923)
Right to Conceive and raise ones
children deemed essential

4. Sandosky v. Kramer violations of
455 U.S 745, 753 (1982)
parents interest to Care and
manage the Child does not
evaporate to the State if parents
are not model parents.

5) Deprivation of Rights under
color of Law

6) Denial of Fair trial.
Due process Clause and the fact
no person will be deprived of
life, liberty or depossed of property

79

7. the fact that anyone who testifies
in Court must have 1st hand
Knowledge of the events. Use of
police reports go against rules
and procedures of Court and such
that testimony must be disallowed

8. These defendants used trickery, duress
fabrication and false testimony
and false evidence and failed
to disclose exculpatory evidence
in preparing reports and Court
documents to the Court.

9. All Codes rules and regulations
are for government authorities
only we plaintiffs affirm we
are human Creators in accordance
with Gods laws. All Codes, rules
and regulations are unconstitutional
and lack due process. yet these
Codes, rules and regulations are
and continue to be used to
deny plaintiffs their Constitutional
rights and keep Melvin A Punch,
Kyion Punch, Kaybri Punch and Celeste

Norberto in State Custody And deprive plaintiffs of their rights in violation of Rodriguez V. Ray Donovan 769 F 2d. 1344, 1348 (1985)

10. State funds have been misappropriated by fraud and False testimony.

11. Obstruction of Justice by State Officials

12. Misuse of Official Authority

13. And intent to defraud the Federal Government through the Social Security Trust Fund.

14. Abuse of Position as a public Servant by performing illegal acts within or related to their Official duties.

15. No warrant was issued which had been Signed by a Judge with an affadavitt Signed by 2 Cooperating witnesses and obtained from the Court to remove And of the four Named Children

16. Law of Supremacy
No state may make laws
that take away U.S Constitutional
Rights

17. Cruden Us. Neal
every man is independent of
All laws except those prescribed
by Nature. He is not bound
by any institutions formed
by his fellow man without
his Consent.

18 Violation of Plaintiffs
Declaration of Rights and the
perpetutily of individual Rights

18. These individuals actions Seriously
violated plaintiffs rights and caused
them irreperable harm. There Actions
are an affront to the public at
large and we ask this Court to
allow this action to move Forward
to repair the publics interests
and Confidence in our Judiciary
and our Child Protective Services System.
These crimes Cannot go Un punished
and allowed to continue to harm the public

Plaintiffs are asking punitive and Compensatory Damages from all Defendants in the amount off 66 million dollars. And the return of Melvin Andrew Punch, Kyion Punch Kaylani Punch and Celeste Norberto to their parents plaintiffs Melvin Punch and Amy Whalen

Signed under pains and penalty of perjury

Respectfully Submitted
Melvin Punch
Mel Punch 2/24/2023

Amy Whalen
Amy Whal 2/24/23